I2DALEY, Judge.
Riverside Associates, a Louisiana Partnership in Commendam, appeals from a summary judgment in favor of plaintiff Universal Guarantee Life Insurance Company (UGL), finding UGL to be the owner of certain partnership property that Riverside alleges was transferred without the necessary consent of the Partner in Commendam, Gervais F. Fav-rot & Company (Favrot). This judgment arose from cross motions for summary judgment filed by Riverside and Robert L. Mar-rero[1], and by UGL. Additionally, Riverside and Marrero’s motion for summary judgment was denied and they were enjoined from asserting any further claims to or against the partnership property, 9.3 acres of undeveloped commercial land located at the intersection of Interstate 10 and Power Boulevard in Jefferson Parish. Further, their reeonven-tional demand was also dismissed.
We reverse the trial court’s judgment. Specifically, we find the trial court’s judgment that holds UGL to be the owner of the partnership property erroneous, 13because we find that the partnership agreement required the partner in commendam’s express permission to transfer the Partnership Property. We also find erroneous that portion of the judgment that dismisses Riverside’s recon-ventional demand, because we find that the parties specifically agreed that only the issue of the partner in commendam’s consent would be considered. We expressly do not reach the merits of Riverside’s reconventional demand. We remand for further proceedings.
Procedural Background
UGL filed a Petition on May 30, 1996, seeking to be declared owner of the above described partnership property. UGL alleged in the petition that it had acquired the property in 1993 through a dation en paiement in satisfaction of a debt owed to UGL by Fidelity Fire & Casualty Insurance Company, who had acquired the property through an act of transfer from Riverside Associates on December 29, 1988. UGL stated that upon information and belief, despite the 1988 and 1993 transfers, Riverside still claimed to have an ownership interest in the property, and UGL sought to clear the title through this action for declaratory judgment.
Riverside was organized as a Partnership in Commendam on July 13, 1984. The general partner was Mark B. Herman. The partner in commendam was Favrot. The partnership agreement was filed into the public records on July 20,1984.
According to the record and briefs, on July 13, 1984, Riverside purchased the property from Louisiana General Services.' On March 23, 1988, Favrot assigned all of its partnership interest in Riverside to Public Investors, Inc., which assignment was recorded in the *1166 public records.[2] Subsequently on the same day, Public Investors | 4 transferred its interest in the partnership to Midwest Life Insurance Company, who thereafter, in June of 1988, transferred its interest, to Fidelity Fire & Casualty. Apparently these two latter transfers were not recorded in the public records.
On or about December 29, 1988, Riverside transferred the Partnership Property to Fidelity. This transaction was recorded in the public records. Riverside’s answer and re-conventional demand allege that this transfer was part of a scheme or pattern by Robert Bilbruck and others to defraud various state insurance regulators and/or creditors of Public Investors.
After the transfer to Fidelity, Fidelity executed a mortgage in favor of UGL to secure an indebtedness allegedly due UGL from Fidelity. Subsequently, Fidelity transferred the property to UGL through the dation en paiement described above. This dation en paiement was approved by the State Commissioner of Insurance.
Riverside’s reconventional demand alleged that the December 29, 1988 transfer of the property from Riverside to Fidelity is void ab initio because the general partner Mark Herman (and his agent Robert Bilbruck) failed to get the express permission for the transfer from the partner in commendam, Favrot, as per the terms of the partnership agreement. UGL argued that the transfer was part of the partnership’s dissolution and/or liquidation, and thus according to the partnership agreement, no permission was required of the partner in commendam. In the alternative, UGL argued that Favrot’s permission for the transfer of the property in a liquidation proceeding was found in the very terms of the partnership agreement.
Riverside and UGL filed cross motions for summary judgment. Both motions asked the court, among other things, to find each mover the owner of the partnership property. By a joint motion and an agreement at the hearing, both parties agreed that they would limit their motions for summary judgment to the issue of whether the |spartner in com-mendam’s consent was needed for the December 29, 1988 transfer of the property by Riverside to Fidelity.
ANALYSIS
At issue is the interpretation of various provisions of the partnership agreement, excerpted below.
8. Rights and Powers of General Partner.
(a) The Partnership shall be managed and the .conduct of its business shall be controlled by the General Partner in accordance with the provisions of this agreement.
(b) The- General Partner shall possess all of the powers and rights of a general partner under applicable law. Without limiting the generality of the foregoing, the General Partner is authorized on behalf of the Partnership to:
* * * * *
(13) Sell, relinquish, release or otherwise dispose of Partnership property which, in the judgment of the General Partner should be sold, relinquished, released or otherwise disposed of. Notwithstanding anything to the contrary, the General Partner shall not have the authority to sell, exchange or otherwise dispose of the Partnership Property without the consent of the Partner in Commendam. .
* * * * * *
(c) The Partner in Commendam hereby irrevocably constitutes and appoints the General Partner his true and lawful attorney in his name, place and stead, to make, execute, sign, acknowledge and file:
* * * * *
*1167 (2) Such certificates and other instruments and amendments thereto (including Certificates of Limited Partnership and amendments and revocations thereof) which the General Partner deems necessary or appropriate to qualify, or continue the qualification of, the. Partnership as a partnership in com-mendam (or, in other states, a limited partnership) in the jurisdictions in which the Partnership conducts business or owns property;
(3) Such other certificates or instruments as may be required by law or appropriate to the conduct of |6the Partnership business and the exercise by the General Partner of its authority under this Agreement, or to the dissolution and termination of the Partnership.
* * * * * *
It is expressly intended by the Partner in Commendam that the power of attorney hereby granted is not intended to authorize the General Partner to perform any act on behalf of the Partner in Commen-dam which would adversely affect his status as a partner in commendam. Said power of attorney shall survive the assignment by the Partner in Commendam of the whole or any portion of its interest in the Partnership until such time as all actions necessary to effect the substitution of the assignee thereof as a Substituted Partner in Commendam (as defined in Section 16(c) hereof) shall have been performed and shall also, to the extent permitted by law, survive the bankruptcy of the Partner in Commendam.
* * * * * *
18. Dissolution
(a) Upon the dissolution of the Partnership, the General Partner shall liquidate the assets of the Partnership and shall apply and distribute the proceeds of such liquidation in the following order or priority:
* sfc * :¡t ‡ *
(Emphasis added).
UGL interprets the agreement as not requiring the partner in commendam’s permission for the transfer of the property pursuant to a dissolution or liquidation proceeding (Sections 8(c)(3) and 18(a)). Alternatively, they claim that the same provisions actually give the partner in commendam’s permission for the general partner to make the exact kind of transaction as the December 29,1988 transfer, in the event of a dissolution.
Riverside, on the other hand, interprets Section 8(b)(13) as absolutely requiring the partner in eommendam’s permission for any transfer or sale of the Partnership Property.
|7The trial court found that the partnership agreement required the consent of the partner in commendam for the transfer, citing Section . 8(13).[3] However, the court also found that the agreement went to great care to get the partner in eommendam’s prior consent for the transfer of the property in one specific occurrence, the liquidation of the partnership (Section 18(a)). We disagree.
UGL argues that because the deed of transfer recites that the transfer is part of the partnership’s dissolution, the partner in commendam’s permission was impliedly granted by the sections of the partnership agreement regarding the general power of attorney (§ 8(c)).
Because it is argued that the permission was impliedly given for the transfer of the property in a dissolution proceeding, wé look to the partnership agreement for direction. The partnership agreement is silent as to the causes and/or methods by which the partnership may effect a dissolution. The partnership agreement, in Section 4, states that the partnership shall terminate on December 31, 2010, unless sooner terminated by a) the disposition of all of the property real and personal owned by the Partnership; b) the written consent of those partners (whether General on in Commendam) owning in the *1168 aggregate at least 80% of the partnership percentage interests in the Partnership.[4] There is no conjunction (and, or) between these two conditions, so it is not clear whether the termination required the fulfillment of both conditions.
The record shows only the transfer of the Partnership Property. It does not show the disposition of any other property, real or personal, of the partnership. jgNeither does it contain any evidence of the written consent of 80% of the partners. The record simply contains a deed with a recitation that the transfer of the Partnership Property to Fidelity was in furtherance of the dissolution and liquidation of the partnership.
At oral argument, counsel for UGL argued that the attainment of the partnership’s objective became impossible with the property’s transfer to Fidelity, and thus this is the terminating event. However, we find the argument absurd and circular that the general partner could cause the condition for dissolution, the transfer of the property and the impossibility of the partnership’s object, without the permission of the partner in eom-mendam, but argue the dissolution, thus caused by the transfer, as the justification for the transfer.
We also reject UGL’s interpretation of the partnership agreement, that the' statement found in § 8(b)(13): “Notwithstanding anything to the contrary, the General Partner shall not have the authority to sell, exchange or otherwise dispose of the Partnership Property without the consent of the Partner in Commendam.” applies only to Section 8 and not to the partnership agreement as a whole. The purpose of the partnership was the acquisition and development of the Partnership Property. Thus, it is illogical that the general partner could, without permission of the partner in commendam, dispose of the partnership property, and thereby terminate the partnership without a vote of the' partners.
Likewise, we do not agree with UGL’s position that this general power of attorney gives to the general partner the partner in eommendam’s implied consent to the sale of the Partnership Property. The authority to alienate a thing must be given expressly. LSA-C.C. art. 2996.
IsThe judgment must also be reversed because it dismisses Riverside’s reconventional demand. First, the parties specifically agreed that the only issue before the trial court at hearing was the issue of the necessity of the partner in commendam’s consent to the transfer. Second, Riverside’s allegations of a fraudulent scheme are not resolved by the determination of the consent issue.
UGL filed Exceptions of No Cause of Action and No Right of Action in this court prior to oral argument. Because we reverse the trial court’s judgment, we also remand these exceptions to the trial court for consideration.
REVERSED.

. Bankruptcy Trustee of Public Investors.

. According to the Partnership Agreement, the assignment- of a partner in commendam's interest did not make the assignee a partner in com-mendam. Furlher steps were necessary to make the assignee a substituted partner in commen-dam. The parties have agreed that despite the assignment of Favrot’s beneficial interest in the partnership, no entity was substituted as partner in commendam.

. At this place in the Judgment, the court calls Riverside Associates the partner in commendam. This appears to be a typographical error, as later in the judgment the court refers to the partner in commendam as Favrot.

. Section 10 of the Partnership Agreement shows that Mark Herman’s interest was 25%, and Fav-rot’s was 75%. Thus, Favrot’s consent would have been needed to terminate the partnership.